OPINION
{¶ 1} Defendant-appellant Steve Higgins appeals from his conviction and sentence for Aggravated Burglary. He contends that his conviction must be reversed because he was denied the effective assistance of counsel. He also contends that he was denied a fair trial as a result of prosecutorial misconduct and errors made by the trial court in instructing the jury. Higgins further claims that the evidence did not support a conviction. Finally, Higgins argues that the cumulative effect of the errors committed deprived him of a fair trial.
 {¶ 2} We conclude that the record does not support the claims of prosecutorial misconduct or ineffective assistance of counsel. Furthermore, the trial court did not err in instructing the jury. Since we find no error, we cannot find cumulative error. Additionally, we find that the conviction is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 3} On December 15, 2000, Leonard Mathews, Deon Benson and Donna Payne were in Mathews' apartment drinking beer while Mathews prepared dinner. At some
 {¶ 4} point, Higgins knocked on the apartment door, and a fight ensued between Mathews and Higgins.
 {¶ 5} According to Higgins' version of the events, he was in the apartment building looking for a friend. After discovering that the friend was not home, Higgins ran into Mathews, who invited him into his apartment. Upon entering the apartment, Higgins saw Donna Payne, whom he described as his longtime girlfriend. He began to speak to Donna, when Mathews picked up a bat and swung at Higgins. Mathews and Higgins began to fight, and Higgins bit Mathews in self-defense. Mathews threw boiling water at Higgins. As Higgins was escaping through the door, Mathews threw macaroni and cheese at him. The macaroni and cheese "flew all over the place, even outside the door."
 {¶ 6} According to Mathews, he was expecting his girlfriend when he heard a knock on the door. Higgins had been there the day before looking for his ex-girlfriend, Donna Payne, and Mathews had refused to let him enter. Upon opening the door, Mathews saw Higgins who asked, "Do you remember me?" Mathews immediately tried to shut the door, but Higgins kept pushing against the door, and forced his way in while calling to Donna. Once in the apartment, Higgins began attacking Mathews. Donna and Deon fled the apartment. Mathews' head hit the wall, and Higgins bit him on the shoulder. Mathews grabbed a pot of boiling water and threw it at Higgins in an attempt to stop him. Higgins slipped, and Mathews threw a pot of macaroni and cheese at him. Higgins kept hitting Mathews, then he grabbed a shovel that was in the apartment, and left the apartment with the shovel. As he walked out, he began knocking on other doors and telling Donna to "come out." Mathews called 911. The medics who arrived on the scene indicated that the bite was not serious. However, Mathews went to the hospital, where a dressing was placed on the wound. The wound took four months to heal, and left a scar.
 {¶ 7} Higgins was indicted on one count of Aggravated Burglary, in violation of R.C. 2911.11(A). Following a jury trial, he was convicted as charged, and was sentenced accordingly. Higgins appeals.
 II {¶ 8} The First Assignment of Error states as follows:
 {¶ 9} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 10} Higgins contends that he was denied the effective assistance of counsel at trial. Specifically, he cites the following as grounds for this claim: (1) counsel failed to request "vital jury instructions"; (2) counsel failed to object to the introduction of a hat and t-shirt, to hearsay evidence, and to prejudicial comments made by the prosecutor; (3) counsel failed to seek the suppression of statements made by Higgins; (4) counsel introduced "unnecessary, irrelevant and prejudicial evidence" at trial; (5) counsel failed to properly investigate and prepare for trial.
 {¶ 11} To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To demonstrate deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 142. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Id. Assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. Id. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 12} Higgins first contends that his counsel was deficient for failing to request a limiting instruction with respect to evidence that he had committed a prior offense of Aggravated Robbery. Specifically, he complains that after he admitted on direct examination that he had been convicted of Aggravated Robbery, the prosecutor made comments during cross-examination and closing argument regarding his tendency to act violently. He appears to argue that since the prosecutor intimated that he was violent, the jury should have been instructed that it could not draw any inference that he was likely to have committed the crime charged simply because he had committed a violent crime in the past.
 {¶ 13} As noted in Part III, below, Higgins placed his character for truthfulness in question by claiming that he was a truthful person because he willingly admitted to the jury that he had a prior conviction. He also opened the door to the prosecutor's comments by claiming that even though he had previously committed Aggravated Robbery, he is not a violent person. Under these circumstances, the State was entitled to offer proof, including prior violent acts, tending to rebut Higgins' testimony that he is not a violent person. Furthermore, it is possible that defense counsel believed that by requesting such an instruction he would risk drawing more attention to the prior conviction. Therefore, we find that a limiting instruction was not appropriate, and that defense counsel was not deficient in failing to request a limiting instruction.
 {¶ 14} Higgins also contends that counsel was deficient because he failed to request a limiting instruction with regard to the jury's view of the apartment. Specifically, he contends that he was entitled to an instruction that the view of the premises by the jury was not to be considered as evidence. His claim is based upon the argument that since the jurors were exposed to the present condition of the apartment, not the condition as it was at the time of the incident, they should "not have been allowed to speculate that marks or other items pointed out to them were evidence relating" to the incident. It appears that he refers to a mark on the ceiling of the apartment at the time of the view. Mathews later testified that there was a mark on the ceiling that was made by the macaroni and cheese he threw at Higgins.
 {¶ 15} First, the record does not support a claim that any marks or items were pointed out to the jurors during the view. Second, the only evidentiary conclusion that the jury might have improperly reached from their view of the scene would have been that a mark was left from the throwing of the pot of macaroni. That Mathews threw the macaroni and cheese at Higgins during the incident was not disputed; both Mathews and Higgins testified to that effect. Therefore, trial counsel's failure to have requested an instruction that the jurors' view of the scene should not be considered as evidence was of no consequence.
 {¶ 16} Higgins next claims that his counsel's performance was deficient and prejudicial because he failed to request an instruction on self-defense. Higgins contends that he was entitled to a self-defense instruction in order to "defeat the assault element of the charge" of Aggravated Burglary; in other words, a finding that he acted in self-defense would negate the assault element of the charge, relieving him of culpability.
 {¶ 17} The Ohio Supreme Court has stated that there are affirmative defenses that do not seek to negate any of the elements of the offense that the State is required to prove. State v. Martin (1986),21 Ohio St.3d 91, 94, citation omitted. One of these defenses is self-defense, which is characterized as a "justification for admitted conduct." Id. The Court has further explained this characterization as follows:
 {¶ 18} "Self-defense represents more than a `denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged * * *.' Rather, * * * this defense admits the facts claimed by the prosecution and then relies on independent facts or circumstances which the defendant claims exempt him from liability. Thus, the burden of proving self-defense by a preponderance of the evidence does not require the defendant to prove his innocence by disproving an element of the offense with which he is charged. The elements of the crime and the existence of self-defense are separate issues. Self-defense seeks to relieve the defendant from culpability rather than to negate an element of the offense charged." Id.
 {¶ 19} The defense of self-defense requires a defendant to establish, among other things, that he was not at fault in creating the situation giving rise to the affray. State v. Barnes, 94 Ohio St.3d 21,24, 2002-Ohio-68. However, trespass is an essential element of the offense of Aggravated Burglary, as defined in R.C. 2911.11(A)(1), which provides, in pertinent part, as follows: "No person, by force * * * shall trespass in an occupied structure * * * when another person other than the accomplice of the offender is present, with purpose to commit in the structure * * * if * * * [t]he offender inflicts * * * physical harm on another." In order for the jury to find Higgins guilty as charged, it necessarily had to find that he was trespassing when he injured Mathews. This is inconsistent with the defense of self-defense, because it presupposes that Higgins was at fault in creating the situation that gave rise to the altercation. Thus, self-defense was not available as a defense, and counsel's performance was not deficient in having failed to ask for the instruction.
 {¶ 20} Next, Higgins cites his counsel's failure to object to the introduction of a hat and t-shirt as an instance of ineffective representation. The State introduced the items, which purported to be a hat worn by Higgins and a shirt worn by Mathews at the time of the attack. The shirt had brown stains on it that, according to Mathews' testimony, were blood stains. Higgins argues that the State failed to establish an appropriate chain of custody with regard to the clothing items, and therefore failed to properly identify or authenticate the evidence. His argument centers on the claim that the shirt could have been tampered with, and that the blood on the shirt was, in fact, not blood. The State concedes that it did not establish a chain of custody with regard to the clothing.
 {¶ 21} "Chain of custody is a part of the authentication and identification mandate set forth in Evid.R. 901, and the state has the burden of establishing the chain of custody of a specific piece of evidence." State v. Brown (1995), 107 Ohio App.3d 194, 200. "The state's burden, however, is not absolute since `[t]he state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur.'" Id., citation omitted. Any breaks in the chain of custody go to the weight of the evidence, not to its admissibility. Id. Therefore, a strict chain of custody is not always required in order for physical evidence to be admissible. State v. Wilkins (1980),64 Ohio St.2d 382, 389.
 {¶ 22} Evidence Rule 901(A) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." In this case, Mathews testified, and identified the shirt as the one he was wearing when Higgins attacked him. Pursuant to Evidence Rule 901(B)(1), authentication and identification testimony by a witness with knowledge that the evidence is what it is claimed to be may be used to meet the standard set in Evidence Rule 901(A).
 {¶ 23} We note that the issue of whether the stains on the shirt were bloodstains goes to the weight to be given the evidence, rather than to its admissibility. Even if there were a problem with the admission of the shirt, it had no effect on the outcome of the case, because the undisputed evidence is that, regardless of whether there was blood on the shirt, Higgins bit Mathews, causing him physical injury.
 {¶ 24} Higgins also asserts that his counsel's failure to seek suppression of, or to object to, statements made by him and by Mathews to the police was deficient.
 {¶ 25} According to the record, Higgins told the police that he did not break in or force his way into Mathews' apartment. Higgins contends that counsel should have "tested the reliability of" his statement to the police. However, this statement to the police was entirely exculpatory, and supported defense counsel's theory at trial that Higgins did not trespass into Mathews' apartment. Also, we cannot discern, and Higgins does not suggest, any basis for excluding the statement. We find no basis for concluding that trial counsel was deficient, or that Higgins was prejudiced. Therefore, this argument lacks merit.
 {¶ 26} Mathews told the police that "this dude just busted in my house." The officer was then asked, at trial, whether Mathews identified Higgins as the perpetrator, and the officer responded "later on." The officer then indicated that investigation revealed that Higgins was the assailant.
 {¶ 27} The police officer testified that he arrived at the scene within a few minutes of the incident. He testified that Mathews was "pretty excited", "very sweaty, very nervous," "talking fast, [and] wasn't able to stand still." From the record before us, it is clear that Mathews was "excited" when he stated that "the dude just busted" into his house; what is not so clear is whether he was still agitated when he "later on" identified Higgins as the defendant. However, it doesn't matter. First, Higgins does not contest the identification. Second, an out-of-court statement by a witness who testifies at trial and is subject to cross-examination concerning the statement is not inadmissible hearsay if the statement is "one of identification of a person soon after perceiving him, if the circumstances demonstrate the reliability of the prior identification." Evid. R. 801(D)(1)(c).
 {¶ 28} Next, Higgins contends that counsel was ineffective because he noted during opening statement that Higgins had been at a bar and had "a couple of drinks or so" prior to going to Mathews' apartment. During his direct testimony, Higgins testified that he had left work around 4:30 p.m. on the day of the incident and gone to a bar for two or three hours. Higgins argues that this evidence was unnecessary and prejudicial, because it tended to create an inference that he was drunk, and was therefore the aggressor.
 {¶ 29} It appears that part of the trial strategy in this case was to depict Higgins and Mathews as friends. Indeed, Higgins testified that he went to Mathews with "two packs of Colt 45" beer, and that Mathews invited him. It also appears that part of the strategy was to portray Higgins as being a person who would honestly admit to anything he had done, so long as it were true. This bolstered his claim that he did not attack Mathews; in other words, he is such an honest person that if he had attacked Mathews, he would admit it. Given that this case boiled down to whether the jury believed Higgins or Mathews, we cannot say that trial counsel's strategy was deficient.
 {¶ 30} Higgins also contests counsel's performance by claiming that he failed to object to prejudicial comments made by the prosecutor during closing argument. For the reasons set forth in the Part III, below, we find that the prosecutor's comments were not improper, and were not objectionable. Therefore, counsel cannot be deemed ineffective for failing to have objected to them.
 {¶ 31} Finally, Higgins claims that counsel failed to properly investigate and prepare his case for trial. He contends that counsel was caught by surprise at trial by Mathews' testimony indicating that Higgins had "thrown punches" at Mathews during the scuffle. He further contends that counsel should have been aware of this fact based upon discovery provided prior to trial, which indicated that a "fight" had occurred. He further argues that counsel should have issued a subpoena for jail records that would have established that Higgins suffered from a rotator cuff injury and would have been incapable of throwing punches.
 {¶ 32} First, from the record, it appears that counsel intended to obtain the jail records, and that the records would be presented to the trial court the next day to determine whether they could be admitted. Second, Higgins testified the day after counsel discussed the issue of the records with the court, and no mention was made of any injury during his testimony. Therefore, as the State points out, it is possible that counsel obtained the records, found that they did not support the claimed injury, and consequently decided, as a matter of trial strategy, not to pursue this line of defense, especially since it might undermine the my-client-is-always-truthful defense. In any event, the record does not establish the existence of these records, that counsel failed to obtain them, or that counsel neglected to utilize the information in the records. The claim of ineffective assistance of counsel has not been established on this record.
 {¶ 33} The First Assignment of Error is overruled.
 III {¶ 34} The Second Assignment of Error is as follows:
 {¶ 35} "APPELLANT WAS DENIED A FAIR TRIAL AS THE CONSEQUENCE OF PROSECUTORIAL MISCONDUCT."
 {¶ 36} Higgins contends that the prosecutor made improper comments during closing arguments by commenting on his prior conviction for Aggravated Robbery.
 {¶ 37} In addressing a claim of prosecutorial misconduct, we must determine whether the prosecutor's conduct was improper, and, if so, whether it prejudicially affected Higgins' substantial rights. State v.Smith (1984), 14 Ohio St.3d 13, 14. We will not deem a trial unfair if, in the context of the entire trial, it appears beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. Id. at 15, citation omitted.
 {¶ 38} During his direct testimony, Higgins testified that he had a previous conviction for Aggravated Robbery. He also stated that despite the conviction, he is not a violent person. He also attempted to convey a message to the jury that because he admitted to them that he had prior conviction, they should find him to be of truthful character, should credit his testimony over that of Mathews, and should find that Higgins did not force his way into the apartment and that Mathews initiated the fight.
 {¶ 39} We conclude that the record supports a finding that the prosecutor did not act improperly in commenting on Higgins' prior conviction. Evid. R. 404(A)(1) permits a prosecutor to offer evidence of a pertinent trait of the accused's character if evidence of that trait has been offered by the accused. When Higgins testified that he is not a violent person, he put into issue his propensity for violence. Evidence concerning this trait of his character became admissible, and on cross-examination, "inquiry is allowable into relevant specific instances of conduct," where evidence of a trait of character is admissible. Evid. R. 405(A).
 {¶ 40} Higgins opened the door for inquiry on cross-examination concerning prior violent acts, the State took fair advantage of that opening, and the State was allowed to comment in closing argument on the testimony so elicited.
 {¶ 41} Higgins' Second Assignment of Error is overruled.
 IV {¶ 42} Higgins' Third Assignment of Error provides:
 {¶ 43} "THE TRIAL COURT ERRED IN FAILING TO GIVE ALL RELEVANT JURY INSTRUCTIONS."
 {¶ 44} Higgins contends that the trial court erred by failing to instruct the jury on self-defense, and by failing to give limiting instructions concerning his prior conviction and the fact that the jury's view of Mathews' apartment could not be considered as evidence.
 {¶ 45} By failing to request these instructions during trial, Higgins has waived all but plain error. As previously stated, we conclude that Higgins was not entitled to an instruction on self-defense. Therefore, even had the trial court been requested to do so, it would not have erred by failing to instruct on this defense. Additionally, for the reasons set forth in Part II, above, we conclude that the trial court did not err by failing to give limiting instructions regarding Higgins' prior criminal conviction; no limiting instructions were warranted. Also for the reasons set forth in Part II, above, there was no reasonable likelihood of prejudice arising from the fact that the jury was not instructed that a view of the scene is not evidence.
 {¶ 46} The Third Assignment of Error is overruled.
 V {¶ 47} The Fourth Assignment of Error states as follows:
 {¶ 48} "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 49} Under this assignment of error, Higgins argues that his conviction is against the manifest weight of the evidence. In particular, he points to Mathews' testimony regarding the use of a bat and a bowl of macaroni and cheese as indicating that Mathews, not Higgins, was the original aggressor in the incident.
 {¶ 50} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, citation omitted. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily [issues to be decided by] the trier of fact." State v. Coley,93 Ohio St.3d 253, 270, 2001-Ohio-1340, citation omitted. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 51} In this case, Higgins testified that Mathews had invited him into the apartment, and that Mathews attacked him with a baseball bat. Higgins admitted to biting Mathews, but claimed he did so in self-defense.
 {¶ 52} Conversely, Mathews testified that when he opened his apartment door in response to a knock, Higgins forced his way in by pushing on the door. Mathews also testified that Higgins began to attack him and that Mathews threw a pot of water and a pot of macaroni and cheese at Higgins to stop him. Mathews also testified that Higgins bit him.
 {¶ 53} Higgins contends that the fact that, during his testimony, Mathews initially denied, then admitted, having a bat behind his apartment door leads to the "conclusion that [Mathews] knew he had provoked the incident by hitting [Higgins] with an object." We disagree. While Mathews did deny having an aluminum bat in response to defense counsel's questioning, he subsequently noted that he did have in his home his son's small wooden "bean" bat, which was no more than fifteen inches long, and the size of a quarter in diameter. Based upon the record before us, we cannot reach the conclusion urged by Higgins. While the jury could have discredited Mathews' testimony because of his initial denial of having a bat, the jurors could also have concluded merely that Mathews did not immediately associate his son's toy bat as having been relevant to the defense's inquiry regarding an aluminum bat.
 {¶ 54} Second, Higgins claims that the fact that macaroni and cheese was splattered on the apartment door supports his version of the events, because it indicates that he was trying to escape, rather than to continue the struggle, when Mathews threw it at him.
 {¶ 55} Again, the jury was in the best position to evaluate the evidence before it. We note that, while the jury was free to interpret this evidence as Higgins urges, it was also free to find that by throwing hot food at Higgins, Mathews was merely attempting to defend himself from attack.
 {¶ 56} The jury had the opportunity to evaluate the credibility of Higgins and Mathews, and to give their testimony its appropriate probative weight. From our review of the record we cannot say that the jury lost its way in determining Mathews to be the more credible witness.
 {¶ 57} Higgins' Fourth Assignment of Error is overruled.
 VI {¶ 58} The Fifth Assignment of Error is as follows:
 {¶ 59} "THE CUMULATIVE EFFECT OF THE ERRORS DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL."
 {¶ 60} Higgins argues that the cumulative effect of the errors in this case denied him a fair trial.
 {¶ 61} A conviction may be reversed if the cumulative effect of the errors deprives the defendant of a fair trial. State v. Moore,81 Ohio St.3d 22, 41, 1998-Ohio-441. When considered together, separately harmless errors may violate a defendant's right to a fair trial. Statev. Madrigal, 87 Ohio St.3d 378, 397, 2000-Ohio-448. In order to determine if "cumulative" error is present, we must find that multiple errors have been committed at trial. Id. at 398. In this case, we have found no errors having any significant prejudicial effect, either singly or cumulatively. Accordingly, the Fifth Assignment of Error is overruled.
 VII {¶ 62} All of Higgins' Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
GRADY and YOUNG, JJ., concur.